No. 64,581

STATE OF KANSAS, *ex rel.* DANIEL L. LOVE, COUNTY ATTORNEY FOR FORD COUNTY, KANSAS, and THE STATE OF KANSAS, *Appellees,* v. ONE 1967 CHEVROLET EL CAMINO BEARING VIN #136807Z141367; ONE 1977 CHEVROLET CORVETTE BEARING VIN #1Z37L7S431095; and ONE 1961 BOLE TRAILER HOUSE BEARING VIN #S351112, *Appellants.*

(799 P.2d 1043)

Opinion filed October 26, 1990.

*James T. Myers,* of Dodge City, was on the brief for appellants.

*E. Leigh Hood,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellees.

The opinion of the court was delivered by

Six, J.: This in rem proceeding is our first consideration of the property forfeiture provisions of the Uniform Controlled Substances Act, K.S.A. 1989 Supp. 65-4135 and K.S.A. 1989 Supp. 65-4171.

The trial court ordered forfeiture of a 1967 Chevrolet El Camino, a 1977 Chevrolet Corvette, and a 1961 Bole trailer house, ruling that the State had shown by clear and convincing evidence that the conveyances were: (1) subject to forfeiture (involved in the sale and possession of cocaine); and (2) either owned by Bill Freel, the claimant under the Controlled Substances Act, or used by him in violation of the Act with the owner's knowledge.

The questions for review, ownership of the conveyances and the legality of the search, are controlled by our determination of the propriety of the forfeiture order.

We find no error and affirm.

## Facts

In December 1988, police officers executed a search warrant at Bill Freel's residence (a 1961 Bole trailer) located at the Buffalo Campground in Dodge City, Kansas. The search warrant related to drug paraphernalia and to stolen property in the Bole trailer and a 1977 Chevrolet Corvette. It is unclear if the search warrant also covered cocaine. The search warrant is not included in the record on appeal.

Prior to the execution of the search warrant, the officers were informed that Freel: (1) was selling cocaine in exchange for both money and stolen property; (2) made sales from the trailer and from his car, specifically the Corvette; (3) packaged the cocaine generally in white or paper packets; and (4) carried the packets in amber prescription bottles.

Freel was present when officers arrived at the trailer. The Corvette was not located at the trailer; however, a 1967 Chevrolet El Camino with a personalized license tag bearing Freel's initials was parked in the front of the trailer. Freel told the officers that he was driving the El Camino.

While the trailer was being searched, an officer who was outside the trailer looked in the window of the El Camino and saw an amber prescription bottle laying on the seat. The car door was unlocked. The officer picked up the bottle, opened it, and found several small packets containing white powder. The powder was later tested and determined to be cocaine.

The Corvette was stopped while being driven by Freel's 15-year-old daughter, Tisha, and taken to the Buffalo Campground, where it was searched. A police officer found an amber prescription bottle with white powdery residue in the Corvette. The bottle was tested by the Kansas Bureau of Investigation lab, which reported that there was insufficient material present to conduct an examination.

Several items which were located in the trailer were seized. These items included a small amount of cocaine in a box of Prom Ace (an injectable for horses), and containers and packets which had powdery residue in them. Various items of stolen property were also seized.

The police seized the titles to the three defendant conveyances. The trailer was titled in the name of Tiffany, Freel's 12-year-old daughter; the Corvette in the name of Wilma, Freel's 70-year-old mother; and the El Camino in the name of Tisha.

The State filed the instant forfeiture action pursuant to K.S.A. 1989 Supp. 65-4171. Publication notice was effected. Freel answered and alleged that he was the owner of all three conveyances. At trial, the State did not raise Freel's answer as a bar to Freel's contentions that he was not the owner. Tiffany and Tisha also filed separate answers alleging ownership. Wilma Freel, Bill Freel's mother, did not file any pleading nor did she appear on May 15, 1989, the date set in the publication notice. She was allowed to claim ownership at trial. The State did not assert that she had waived any claim to the subject property. K.S.A. 1989 Supp. 65-4171(b)(2).

The trial court found that: (1) all of the defendant conveyances were lawfully seized and subject to forfeiture; (2) the police officers had reliable information that Freel had been selling drugs out of the vehicles utilizing amber prescription bottles as containers for the drugs; and (3) the amber prescription bottle found in the El Camino was in plain view.

Wilma Freel was, in the opinion of the trial court, a bare legal title owner of the Corvette with no actual proprietary ownership. The trial court held that, although the amber prescription bottle found in the Corvette had insufficient material to test, the Corvette was subject to forfeiture based on the testimony of Cindy Herman. Herman testified that she had purchased cocaine from Freel out of the Corvette. The trial court resolved the El Camino ownership problem by reasoning that Tisha, Freel's 15-year-old daughter, as a third-party owner, had knowledge that Freel was using drugs, that some of her friends were attempting to buy drugs from him, and that she failed to prevent the illegal use of the vehicle.

The trial court reasoned that 12-year-old Tiffany had no actual proprietary interest in the Bole trailer. Freel made a practice of titling his vehicles and equipment in the names of his family members and exercising exclusive dominion and control over their resale and use.

In a related action, Freel pled guilty to one count of possession of cocaine (the cocaine found in the trailer). Apparently, all other criminal charges relating to the Buffalo Campground incident were dismissed.

After the trial in the seizure case, the trial judge recused himself from all cases involving Freel and assigned them to another judge.

### Forfeiture of The Corvette

Freel argues that the trial court should not have ordered the Corvette forfeited because there was "no evidence of cocaine found in the Corvette."

K.S.A. 1989 Supp 65-4135 states in pertinent part:

"(a) The following are subject to forfeiture:

. . . .

"(4) all conveyances, including aircraft, vehicles or vessels, which are used or intended for use to transport or in any manner to facilitate the trans-

portation, sale, receipt, possession, concealment, purchase, exchange or giving away of property described in subsection (a)(1) or (2) [controlled substances]."

K.S.A. 1989 Supp. 65-4171(d) places the burden on the State to establish by clear and convincing evidence that the property is subject to forfeiture under K.S.A. 1989 Supp. 65-4135. (The "clear and convincing" standard was changed by the 1990 legislature to "a preponderance of the evidence." [amendment at L. 1990, ch. 232, § 2, not applicable].) Subsection (d) also provides that if a controlled substance is found in the conveyance at the time of seizure, it will be presumed that the conveyance was being used or intended for use in violation of K.S.A. 1989 Supp. 65-4135(a)(4). The claimant bears the burden of proof to rebut this presumption. K.S.A. 1989 Supp. 65-4171(d).

Based on the testimony of Cindy Herman, the trial court held that the State established by clear and convincing evidence that the Corvette was subject to forfeiture. Under our standard of appellate review, we determine if the trial court's findings of fact are supported by substantial competent evidence and whether they are sufficient to support the trial court's conclusions of law. *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 19, 774 P.2d 919 (1989).

Cindy Herman testified that she had purchased cocaine from Freel out of the Corvette between five and ten times. The last time was on December 1, 1988, one day before the vehicle was seized. Herman also testified that Freel kept the cocaine in amber prescription bottles in the Corvette.

We have not previously interpreted K.S.A. 1989 Supp. 65-4135. The State cites *United States v. One 1980 BMW 320i*, 559 F. Supp. 382 (E.D.N.Y. 1983), and *United States v. One 1975 Chevrolet, Etc.*, 495 F. Supp. 737 (W.D. Mich. 1980). Both cases discuss 21 U.S.C. § 881 (1970), which is almost identical to K.S.A. 1989 Supp. 65-4135. Section 881 provides in part:

"(a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:

. . . .

(4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1) or (2) [controlled substances]."

In *One 1980 BMW*, the vehicle which was forfeited was used for surveillance to facilitate a drug purchase. The court stated:

"Under the federal forfeiture statutes a vehicle is subject to forfeiture if it is used 'in any manner to facilitate the transportation, sale, receipt, possession or concealment of [contraband].' 21 U.S.C § 881(a). Facilitation has been broadly construed to encompass any use or intended use of a vehicle which makes trafficking in contraband 'less difficult and laborious;' *there is no requirement that contraband be actually found within the vehicle.* [Citations omitted.]" (Emphasis added.) 559 F. Supp. at 384.

We agree with the "facilitation" and "use" reasoning in *One 1980 BMW*, and apply it to K.S.A. 1989 Supp. 65-4135(a)(4) and K.S.A. 1989 Supp. 65-4171.

The forfeited vehicle in *One 1975 Chevrolet* had been used to escort another vehicle which carried marijuana. The federal district court held that this use of the vehicle constituted facilitation under 21 U.S.C. § 881(a)(4). Contraband need not be physically present within the vehicle. 495 F. Supp. at 740.

In Freel's case, an amber prescription bottle with white powdery residue was found in the Corvette. Freel regularly stored cocaine in such bottles. Herman testified that she had purchased cocaine out of the Corvette between five and ten times. The evidence showed that the Corvette was used to facilitate the transportation, sale, or concealment of cocaine, a controlled substance.

The trial court's findings of fact and conclusions of law are supported by substantial competent evidence; therefore, the trial court did not err in ordering the Corvette forfeited.

Freel argues that his mother, Wilma, is the bona fide owner of the Corvette and that her interest should not have been forfeited because he violated K.S.A. 1989 Supp. 65-4135 without his mother's knowledge or consent.

K.S.A. 1989 Supp. 65-4135(a)(4)(B) states: "[N]o conveyance is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent."

The State contends that Wilma Freel and Freel's two daughters are merely bare title owners or "nominal owners" without possession, dominion, or control. *U.S. v. One 1945 Douglas C-54 (DC-4) Aircraft, Etc.*, 604 F.2d 27 (8th Cir. 1979), and *United*

*States v. One 1981 Datsun 280ZX*, 563 F. Supp. 470 (E.D. Pa. 1983) (both cases interpreted 21 U.S.C. § 881[a][4]).

In *One 1945 Douglas C-54 (DC-4) Aircraft,* the Eighth Circuit Court of Appeals held that the name on the certificate of aircraft registration was not conclusive as to ownership. 604 F.2d at 29. We agree with the Eighth Circuit.

In our view, ownership under K.S.A. 1989 Supp. 65-4135(a)(4)(B) is defined as having a possessory interest in the res with the attendant characteristics of dominion and control. The possession of bare legal title to the res may be insufficient to establish ownership. Bare legal title without any proprietary interest is not sufficient to establish ownership.

In *One 1981 Datsun 280ZX*, the Datsun was titled in the name of defendant's 72-year-old father. The defendant son, who allegedly used the sports car to facilitate the attempted purchase of a controlled substance, had purchased the car. The son did not need permission to use it. The father had never driven the car. 563 F. Supp. at 471-72. The father did not have standing to challenge the forfeiture.

"The claimant [father] here was a 'front man' for Esposito [son]. Esposito exercised dominion and control over the car and it is he, rather than the claimant, who will suffer from its loss. Thus, the claimant does not have a sufficient ownership interest in the Datsun to accord him standing to challenge the forfeiture." 563 F. Supp. at 476.

The present case is similar to *One 1981 Datsun 280ZX*. Although Freel titled the Corvette in his mother's name, he held the title, insured the vehicle, paid for repairs, and possessed and used the vehicle. Wilma, who lived in Denver, never drove the Corvette. She neither knew its cost nor paid for its insurance.

The trial court found that Wilma was a bare legal title owner and had no proprietary interest in the Corvette. This finding is supported by substantial competent evidence.

### The Plain View Exception

Freel contends that the officer was not lawfully within the El Camino and, consequently, the search of the El Camino was illegal.

The El Camino was not listed in the search warrant. The amber prescription bottle containing the packets of cocaine was discov-

ered in the El Camino. The trial court applied the plain view exception and ordered forfeiture of the El Camino.

The Fourth Amendment to the U.S. Constitution and § 15 of the Bill of Rights of the Kansas Constitution prohibit unreasonable searches and seizures. Section 15 is identical in scope to the Fourth Amendment. *State v. Deskins,* 234 Kan. 529, 531, 673 P.2d 1174 (1983).

Warrantless searches, subject to a few exceptions, are per se unreasonable. *State v. Galloway,* 232 Kan. 87, 89, 652 P.2d 673 (1982), *cert. denied* 475 U.S. 1052 (1986). We have adopted the plain view exception set forth in *Coolidge v. New Hampshire,* 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, *reh. denied* 404 U.S. 874 (1971). *State v. Galloway,* 232 Kan. at 87. Under *Galloway,* three basic requirements must be met before the plain view exception is applicable: (1) The initial intrusion which afforded authorities the plain view must be lawful; (2) the discovery of the evidence must be inadvertent; and (3) the incriminating character of the article must be immediately apparent to the searching authorities. 232 Kan. at 91.

The inadvertence requirement of *Galloway* is not at issue in the instant action. We note, however, that the United States Supreme Court has recently eliminated inadvertence as a plain view exception requirement. *Horton v. California,* 495 U.S. _____, 110 L. Ed. 2d 112, 110 S. Ct. 2301 (1990).

In the instant case, the police officer was lawfully at the trailer executing a search warrant when he looked into the El Camino and saw the amber prescription bottle. He knew that Freel carried his cocaine in amber pill bottles and that Freel was driving the El Camino. The incriminating character of the amber bottle was immediately apparent to the officer.

The lawful intrusion requirement of *Galloway* is not satisfied by the officer's mere presence at the Freel trailer. "Plain view" provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment. *Texas v. Brown,* 460 U.S. 730, 738, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983). See *Horton,* 110 L. Ed. 2d at 123. Plain view is not necessarily an independent exception to the Fourth Amendment, but an extension of whatever the prior justification

for an officer's access to the object may be. *Brown*, 460 U.S. at 738-39.

In the present case, the officer's access to the amber bottle is justified by the automobile exception. The automobile exception was originally based on mobility. It may also be justified because the expectation of privacy, with respect to one's automobile, is significantly less than the privacy expectation relating to one's home. *California v. Carney*, 471 U.S. 386, 391, 85 L. Ed. 2d 406, 105 S. Ct. 2066 (1985). Automobile searches may be upheld if there is probable cause to believe there is evidence of crime in the automobile. *State v. Garcia & Bell*, 210 Kan. 806, 810, 504 P.2d 172 (1972). In the case at bar, the officers had probable cause to believe the El Camino contained criminal evidence. Therefore, the officer's access to the prescription bottle was justified under the automobile exception.

Freel asserts that the search of the amber prescription bottle was not proper. The bottle was opaque and the officer could not see the cocaine in the bottle.

*State v. Jaso*, 231 Kan. 614, 648 P.2d 1 (1982), discussed *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), and held that, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle, including containers which may conceal the object of the search. There are exceptions, however. If the officers have specific knowledge that they are seeking a specific container and that container is found in the vehicle, the container may not be searched without a warrant. 231 Kan. at 621. This distinction was established in *United States v. Chadwick*, 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977) (a specific individual footlocker), and in *Arkansas v. Sanders*, 442 U.S. 753, 61 L. Ed. 2d 235, 99 S. Ct. 2586 (1979) (a specific green suitcase).

In the case at bar, the officers did not know about a specific amber prescription bottle. The officers were simply told that Freel carried his cocaine in amber prescription bottles. The specific container rule does not apply.

The searches of the El Camino and of the amber prescription bottle were lawful. The plain view exception coupled with the automobile exception to the warrant requirement apply.

## Recusal

The trial judge recused himself on August 30, 1989, from all cases involving Freel. This was approximately one month after the conveyance forfeiture trial. Freel had not been sentenced after pleading guilty to possession of cocaine. An indication appears in the record that Freel may have been involved in later criminal cases and in another civil case.

Freel contends, "*If* the reason for recusal existed before the trial on the original case then the Judge's decision should be set aside on all cases."

The trial judge gave no reason for his self-recusal. A presumption of validity attaches to a judgment of the district court. The judgment will not be set aside until it is affirmatively shown to be erroneous. The burden is on Freel to designate a record sufficient to present his position to this court and to establish the claimed error. *First Nat'l Bank & Trust Co. v. Lygrisse*, 231 Kan. 595, 602, 647 P.2d 1268 (1982).

Freel has not demonstrated any abuse of discretion in the trial judge's self-recusal.

Affirmed.